COMMONWEALTH *vs.* SEAN THOMAS.

Suffolk. February 4, 1999. - April 15, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.


*Controlled Substances. Search and Seizure,* Bodily intrusion, Body examina-
tion, Search incident to lawful arrest. *Constitutional Law,* Search and
seizure.

A Superior Court judge correctly concluded that, in the circumstances of a
    police officer's approach to a man on a public street, no reasonable person
    would have felt that he or she could not terminate the encounter, and that
    there had been no seizure within the meaning of the Fourth Amendment to
    the United States Constitution or art. 14 of the Massachusetts Declaration
    of Rights. [405-407]
This court concluded that probable cause is the appropriate standard to apply
    to strip and visual body cavity searches. [407-408]
In the circumstances of a surveillance and arrest of a defendant for violation
    of the controlled substances laws, police had probable cause to conduct a
    strip search and a visual body cavity search for contraband or for concealed
    weapons. [408-409]


INDICTMENTS found and returned in the Superior Court Depart-
ment on May 9, 1996.

A motion to suppress evidence was heard by *Peter M. Lau-
riat,* J., and the cases were tried before *John M. Xifaras,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Murray A. Kohn* for the defendant.

*Jane A. Sullivan,* Assistant District Attorney, for the Com-
monwealth.

ABRAMS, J. A jury convicted the defendant, Sean Thomas, of
unlawful distribution of cocaine, G. L. c. 94C, § 32A (*c*);
unlawful distribution of cocaine within 1,000 feet of a school
zone, G. L. c. 94C, § 32J; unlawful possession of cocaine with
intent to distribute, G. L. c. 94C, § 32A (*c*); and unlawful pos-
session of cocaine with intent to distribute within 1,000 feet of

a school zone, G. L. c. 94C, § 32J.[1] Prior to trial, the defendant moved on two separate grounds to suppress money and cocaine seized from him. The correctness of a Superior Court judge's denial of that motion is the only issue on appeal. We transferred the case to this court on our own motion. We affirm.

We recite the facts found by the motion judge. On the evening of September 26, 1995, three undercover Boston police officers were investigating drug activity in the Roxbury section of Boston. A woman attempted to flag down one of the officers, who was driving an unmarked vehicle. He did not stop, but reported by radio to nearby officers that he believed that the woman was interested in selling narcotics to him. He also communicated his location as well as the woman's description and requested backup.

When the other officers reported that they were in place, the officer returned to the street where he had seen the woman and stopped as she approached the vehicle. The woman asked him if he was "looking for something." The officer responded in the affirmative. She then asked him how many he wanted, and the officer said "a couple." The woman told him to wait, and she walked away from the rear of the officer's vehicle, which was parked on the side of the street. The woman crossed the street and met briefly with a black male, later identified as the defendant. The officer observed the woman and the defendant gesture to one another, then the woman put her hand to her mouth as she walked back toward him.

When the woman returned to the officer's vehicle, he indicated that he wanted two, at which point she opened her mouth and removed two small plastic bags. The officer told her that "they were too small" so he would purchase only one. He gave her two marked five dollar bills, and she handed to him a plastic bag that appeared to contain crack cocaine. The woman then walked away from the vehicle toward the defendant. As the officer drove off, he radioed to the other officers that the transaction was complete. He told them they should observe the defendant and the woman and retrieve the money.

One of the assisting officers saw the defendant and the woman standing on the steps of a building. He approached them to

---

[1] The defendant subsequently pleaded guilty to second and subsequent offenses on the first indictment. G. L. c. 94C, § 32A (*d*). Charges as to the third indictment as a second offense were placed on file with the defendant's consent.

conduct a "field interrogation observation." The officer asked the defendant for his name and address. The officer then asked whether the defendant had any money on him. The defendant produced the two marked bills from his pocket. The officer placed the defendant under arrest.

The defendant was taken to a police station and booked. Immediately after booking, officers escorted the defendant to a corridor in the cellblock area to search him for weapons and contraband.[2] As the defendant removed his pants and underpants, he reached behind his back and retrieved a plastic bag that appeared to contain crack cocaine. The officer then ordered the defendant to turn around and bend over. As the defendant did so, another plastic bag fell to the floor. The officer observed yet another plastic bag in the area between the defendant's buttocks and removed the bag.

In his motion to suppress, the defendant argued that the money was seized pursuant to an illegal stop. He further argued that the cocaine was seized as the fruit of his unlawful arrest and also as a result of an illegal strip search. The motion judge denied the motion, reasoning that the officer's questioning of the defendant did not constitute a seizure, and that the strip search did not violate due process. Applying a probable cause standard, the motion judge also affirmed the validity of the visual body cavity search.

The motion judge's findings of fact are binding in the absence of clear error. We view with respect the motion judge's conclusions of law, but, as this matter is of a constitutional dimension, the judge's ultimate findings and rulings of law are subject to de novo review. *Commonwealth* v. *Alvarado*, 420 Mass. 542, 544 (1995).

1. *Seizure of the defendant.* The defendant contends that the police did not have a reasonable and articulable suspicion that he was engaged in criminal activity when they stopped him. See *Terry* v. *Ohio*, 392 U.S. 1 (1968); *Commonwealth* v. *Lyons*, 409 Mass. 16, 19 (1990); *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). The defendant acknowledges, however, that he cannot test the reasonableness of the stop unless he first shows that he was seized within the meaning of the Fourth Amendment to the United States Constitution or art. 14 of the Mas-

[2]The defendant states that he was subject to a "booking search" as well. That fact was not found by the motion judge.

sachusetts Declaration of Rights. If there was no seizure, the officer's questioning of the defendant did not violate the defendant's constitutional rights. *Commonwealth* v. *Sanchez,* 403 Mass. 640, 643 (1988). We conclude that there was no seizure.[3]

"[A] person has been 'seized' . . . if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Commonwealth* v. *Borges,* 395 Mass. 788, 791 (1985), quoting *United States* v. *Mendenhall,* 446 U.S. 544, 554 (1980). See *Commonwealth* v. *Stoute,* 422 Mass. 782, 786 (1996); *Commonwealth* v. *Thinh Van Cao,* 419 Mass. 383, 387, cert. denied, 515 U.S. 1146 (1995); *Commonwealth* v. *Fraser,* 410 Mass. 541, 543 (1991). "[N]ot every encounter between a law enforcement official and a member of the public constitutes an intrusion of constitutional dimensions requiring justification . . . ." *Stoute, supra* at 789. See *Commonwealth* v. *Pimentel,* 27 Mass. App. Ct. 557, 560 (1989). "[T]he police do not effect a seizure merely by asking questions unless the circumstances of the encounter are sufficiently intimidating that a reasonable person would believe he was not free to turn his back on his interrogator and walk away." *Commonwealth* v. *Fraser, supra* at 544. See *Immigration & Naturalization Serv.* v. *Delgado,* 466 U.S. 210, 216-217 (1984); *Florida* v. *Royer,* 460 U.S. 491, 497 (1983) (plurality opinion); *United States* v. *Mendenhall, supra* at 555.

On the facts found by the motion judge, there is no evidence in the officer's words or conduct from which a reasonable person would have concluded that he or she was not free to leave. The officer approached the defendant on a public street and asked him for his name and address. There was no evidence that the officer ordered the defendant to answer his questions or otherwise indicated that the defendant was not free to terminate the interview. The officer also asked whether the defendant had any money on his person. The officer did not order the defendant to turn over his money. Nor did the officer engage in a show of authority that could have been expected to command the production of the money. *Sanchez, supra* at 644. Rather, the defendant responded to a simple question by voluntarily turning over the

---

[3]There is no evidence of a pursuit that would invoke separate State and Federal inquiries. *Commonwealth* v. *Stoute,* 422 Mass. 782, 784-785, 789 (1996).

money. *Thinh Van Cao, supra* at 386 (no seizure where officer asked defendant's permission before taking his photograph); *Fraser, supra* at 543 (no seizure where officer asked defendant to take his hands out of his pockets). Contrast *Borges, supra* at 791 (officer's request that defendant remove his shoes effected seizure). In these circumstances, the judge was correct in concluding that a reasonable person would not have been so intimidated as to feel that he or she could not terminate the encounter. We therefore affirm the judge's determination that there was no seizure.

2. *Strip search and visual cavity search.* The defendant next complains that the strip search and the visual body cavity search conducted at the police station were unconstitutional.[4] He contends that the searches were unreasonable under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. The United States Supreme Court has stated that "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. . . . Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell* v. *Wolfish,* 441 U.S. 520, 559 (1979) (holding constitutional visual body cavity search of inmates). In *Wolfish,* the Court concluded that visual body cavity searches may be conducted on something less than probable cause. *Id.* at 560. Some courts have interpreted *Wolfish* to require only that police have a reasonable suspicion before conducting a strip or a visual cavity search. See, e.g., *Swain* v. *Spinney,* 117 F.3d 1, 5 (1st Cir. 1997); *Justice* v. *Peachtree City,* 961 F.2d 188, 192 (11th Cir. 1992); *Masters* v. *Crouch,* 872 F.2d 1248, 1255 (6th Cir.), cert. denied sub nom. *Frey* v. *Masters,* 493 U.S. 977 (1989); *Weber* v. *Dell,* 804 F.2d 796, 802 (2d Cir. 1986), cert. denied sub nom. *County of Monroe* v. *Weber,* 483 U.S. 1020 (1987).

The judge correctly noted that we have not set out what level of suspicion or probable cause is required before the police can

---

[4]A strip search generally refers to an inspection of a naked individual, without any scrutiny of his body cavities. A visual body cavity search extends to a visual inspection of the anal and genital areas. *Cookish* v. *Powell,* 945 F.2d 441, 444-445 n.5 (1st Cir. 1991). The search in this case encompassed both.

conduct a strip search. The judge, following *Wolfish* and its progeny, applied a reasonable suspicion standard to the strip search, concluding that the police "had a reasonable, particularized suspicion that [the defendant] had concealed drugs on his person." The judge further concluded that the police had probable cause to conduct the visual body cavity examination once the defendant retrieved the cocaine from his buttocks area.

The defendant suggests that we adopt the heightened standard we developed in *Rodriques* v. *Furtado*, 410 Mass. 878 (1991), to the searches performed here. We decline to do so. The defendant asserts that *Rodriques* applies where the government seeks to justify a strip search of a pretrial detainee. The defendant misreads *Rodriques*. In *Rodriques*, we were concerned solely with a manual body cavity search, which involves some degree of touching and probing of body cavities. We stated that there must be "a strong showing of particularized need supported by a high degree of probable cause" before such a search could take place. *Id.* at 888.

Strip searches are not as intrusive as manual body cavity searches so as to require something more than probable cause before they can be deemed reasonable. Cf. *Rodriques, supra.* However, strip searches are more intrusive than "pat-downs," which require police to have only a reasonable suspicion before conducting one. Thus, we conclude that probable cause is the appropriate standard to apply to strip and visual body cavity searches.

The findings of the judge indicate that the police had probable cause to believe that the defendant had concealed contraband. The defendant met with the woman who sold drugs to the undercover officer immediately before she appeared with the cocaine. The defendant and the woman remained on the street. Moments later, the defendant produced the money used to pay for the drugs. It was therefore reasonable for the police to believe that the defendant was the seller's source, and, because he remained on the street with the woman, that he had more hidden drugs. There is no indication that the search was conducted in anything but a professional manner. The search took place immediately following booking. The location of the search, in a corridor next to the holding cells in the police station, concerns us, as it did the motion judge. But we agree with his assessment that the location was not chosen to humiliate or

embarrass the defendant.[5] Once the defendant removed the bag of cocaine from his buttocks area, there was probable cause to believe that others might be concealed there. The judge did not err in concluding that the search for contraband was proper.

Although the judge focused on the search for contraband, the search was also justified by the police's right to search for concealed weapons. The police must protect other detainees as well as themselves. "The justification or reason for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial." *United States* v. *Robinson*, 414 U.S. 218, 234 (1973). See *United States* v. *Edwards*, 415 U.S. 800, 803 (1974) ("searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention").

We conclude that the defendant's motion to suppress was properly denied. There was no seizure of the defendant nor was there an improper search of his person.

*Judgments affirmed.*

---

[5]We recognize that strip and visual body cavity searches impinge seriously on a person's privacy. The United States Court of Appeals for the Seventh Circuit has described visual body cavity searches as "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission." *Mary Beth G.* v. *Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1983), quoting *Tinetti* v. *Wittke*, 479 F. Supp. 486, 491 (E.D. Wis. 1979), aff'd, 620 F.2d 160 (7th Cir. 1980). We share the sentiment of the Supreme Court in *Bell* v. *Wolfish*, 441 U.S. 520, 558 (1979), when it stated that "this practice instinctively gives us the most pause." On the other hand, we also acknowledge the these types of searches may be necessary in some cases, as was demonstrated here. To preserve the privacy of the person being searched to the utmost extent, police should conduct strip and visual body cavity searches in private rooms whenever possible.

In addition, the searches should always be done where no one, other than the investigating officer or officers, can see the person being searched. The record does not reveal whether private rooms were available to conduct the search of the defendant. Nor did the motion judge determine whether anyone actually saw the search from the holding cells.