## COMMONWEALTH *vs.* KEVIN RAMIREZ.

No. 00-P-1134.

Suffolk. December 10, 2001. - October 29, 2002.

Present: PORADA, CYPHER, & McHUGH, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Body examination, Fruits of illegal search. *Narcotic Drugs.*

Despite the fact that the baggy pants that the criminal defendant wore with shorts underneath likely were impediments to a fully thorough search, police officers did not have probable cause to require the defendant to remove his underwear as part of a strip search, where the facts and circumstances within the police officers' knowledge were not enough to warrant a prudent person believing that the officers would find a weapon, contraband, or the fruits or instrumentalities of criminal activity that they could not reasonably expect to discover without forcing the defendant to discard all of his clothing; therefore, the judge erred in denying the defendant's motion to suppress evidence discovered as a result of the search. [320-323]

INDICTMENTS found and returned in the Superior Court Department on July 25, 1996.

A pretrial motion to suppress evidence was heard by *Regina L. Quinlan,* J., and the cases were tried before *Robert W. Banks,* J.

*Frank H. Spillane* for the defendant.

*Kajal K. Chattopadhyay,* Assistant District Attorney, for the Commonwealth.

McHUGH, J. While strip searching the defendant at the Chelsea police station after they had arrested him for being a minor in possession of alcohol, police officers found cocaine in his underwear. He was subsequently indicted for trafficking in cocaine and trafficking in cocaine within 1,000 feet of a school zone. See G. L. c. 94C, §§ 32E, 32J. Before trial, he moved to suppress the fruits of the search. The motion judge denied the

motion and, at the ensuing trial, the defendant was convicted. He now appeals, claiming that the police did not have probable cause for the search and, as a consequence, it was invalid under the principles articulated in *Commonwealth* v. *Thomas*, 429 Mass. 403 (1999). We agree and therefore vacate his convictions.

The motion judge's careful findings of fact regarding the suppression motion, none of which is challenged by either side, reveal that the defendant first came to the attention of Officers Christopher Borum and Robert Belanger of the Chelsea police during a routine patrol because he was part of a group of four or five teenagers loitering in front of a liquor store in Chelsea's Bellingham Square. Among other things, the officers observed a twenty-two ounce bottle of beer in the bottle rack of the defendant's bicycle.

Upon seeing the group and the bottle, Officer Borum got out of the police cruiser in which he was riding with Officer Belanger and approached the gathering. As he did, the group began to disperse and the defendant attempted to leave on his bike. Officer Belanger stopped him and Officer Borum soon joined them. Officer Borum asked the defendant for his birth date and learned from his response that he was nineteen, two years under the legal drinking age. Upon learning the defendant's age, Officer Borum arrested the defendant for possession of alcohol. He performed a patfrisk and discovered that the defendant was wearing "a real baggy type of pants with another pair of shorts underneath." Layers of clothing notwithstanding, the search revealed a small bottle of cognac and a "combat-type" knife with a blade length greater than the four inches a Chelsea knife ordinance permitted. Discovery of the knife prompted Officer Borum to add a charge of violating the knife ordinance to the alcohol charge for which he had arrested the defendant.

In preparation for handcuffing the defendant and placing him in the cruiser for a trip to the police station, Officer Borum searched the defendant a second time. He described the second search as "thorough" and said he conducted it "to make sure [the defendant] had nothing else before placing him in the cruiser and because of the clothing that [he] was wearing, as well." The search revealed nothing.

Search completed, the officers transported the defendant to

the Chelsea police station. Once there, Officer Borum sought and received permission from his supervising officer to strip search the defendant.[1] Officer Borum candidly acknowledged at the suppression hearing that his "only basis [for requesting permission to strip search the defendant] was just the several layers of clothing[;] just to thoroughly search him." The record reveals, and the motion judge found, that "Officer Borum had no reason to suspect that the defendant was in possession of drugs."

The strip search began. As the defendant removed his underwear, Officer Borum testified that he heard something hit the floor. Apparently, the defendant heard it, too, and exclaimed, "Oh, shit." Officer Borum gathered the defendant's underpants from the floor and found a plastic film container in a pocket. Upon opening the container,[2] Officer Borum discovered seventeen small pieces and four larger pieces of what appeared to be crack cocaine. That discovery eventually produced the trafficking indictments.

In denying the defendant's motion to suppress, the motion judge noted the serious invasion of privacy strip searches represent. She also noted, however, that the search was conducted pursuant to a written Chelsea police policy and that such a policy was an appropriate way to balance legitimate needs of law enforcement and individual privacy in the manner the United States Supreme Court suggested in *Bell* v. *Wolfish*, 441 U.S. 520 (1979). The Court there held that routine strip searches of committed inmates and pretrial detainees after contact visits did not violate the Fourth Amendment to the United States Constitution. *Id.* at 558. The judge concluded that there was reasonable suspicion, based on articulable facts, for the strip search of the defendant in this case because he had

[1]At the time, a written Chelsea police policy permitted a strip search if (1) it was approved in advance by the officer in charge; (2) the person in custody had been arrested for a "crime . . . that is normally associated with weapons and contraband"; (3) the officers had "reasonable suspicion to believe that the arrestee [was] concealing contraband or weapons on his body."

[2]Officer Borum's examination of the container was carried out in accordance with a written Chelsea police policy governing examination of closed containers. The defendant here takes no issue with examination of the container or with the policy.

been arrested for offenses involving contraband (alcohol) and weapons (the knife), more contraband (the cognac) had been found on the first search, and he was wearing baggy clothing "which made the search of his person more difficult and which gave ample room for the hiding of more contraband."

Turning from facts to the applicable legal framework, "we view with respect [the trial judge's] conclusions of law . . . . However, [particularly where the defendant's claims raise issues] of constitutional dimension, the judge's ultimate findings and rulings of law are open to reexamination by this court." *Commonwealth* v. *Alvarado*, 420 Mass. 542, 544 (1995). Accord *Commonwealth* v. *Jones*, 375 Mass. 349, 354 (1978).

The defendant rightly does not contest the propriety of his arrest or of the two initial searches. There is no doubt that the police may arrest minors in possession of alcohol. See G. L. c. 138, § 34C. The two searches conducted before the defendant was transported to the police station were valid because, having made a proper arrest, the police had the right to conduct a contemporaneous search for the purpose of "removing any weapons that [he] might use to resist arrest or effect his escape." See *Commonwealth* v. *Santiago*, 410 Mass. 737, 743 n.8 (1991); G. L. c. 276, § 1.

The defendant does, however, challenge the propriety of the strip search, correctly citing *Commonwealth* v. *Thomas*, 429 Mass. 403 (1999), for the proposition that such searches may be conducted only if there is probable cause to do so. In *Thomas*, the defendant had been arrested for a narcotics violation in the immediate aftermath of an undercover police officer's purchase of cocaine. He was booked and then strip searched for contraband and weapons. As he was removing his clothing, he retrieved what appeared to be a bag of crack cocaine from his buttocks. Police then conducted a visual body cavity search and discovered more drugs. *Id.* at 405.

On appeal, Thomas maintained that the strip search was unreasonable and, citing *Rodriques* v. *Furtado*, 410 Mass. 878, 888 (1999), argued that nothing less than "a strong showing of particularized need supported by a high degree of probable cause" would justify either a strip or a visual body cavity search. The Supreme Judicial Court disagreed. *Rodriques*, the court

said, involved a manual body cavity search, something far more intrusive than the kinds of searches Thomas experienced. *Commonwealth* v. *Thomas*, 429 Mass. at 408. Nevertheless, the court said, strip searches and visual body cavity searches were far more seriously invasive than searches conducted by manually probing someone who was fully clothed. *Id.* at 408-409 & n.5. Consequently, the court rejected decisions holding that such searches, like searches through outer garments, were permissible if officers had a reasonable suspicion to conduct them, see, e.g., *Swain* v. *Spinney*, 117 F.3d 1, 5 (1st Cir. 1997), and held that probable cause for such searches was necessary. The court then concluded its opinion by holding that police had probable cause to strip search Thomas for contraband and, "[o]nce [Thomas] removed the bag of cocaine from his buttocks area," probable cause to conduct a visual body cavity search as well. *Commonwealth* v. *Thomas*, 429 Mass. at 409.[3]

*Thomas* was decided after the defendant's trial and the motion judge therefore did not have the benefit of its guidance. Even if one assumes that *Thomas* announced a new rule of law, the defendant may take advantage of its holding because (1) his case is on direct appeal and *Thomas* was decided while the appeal was pending[4] and (2) the issue was preserved at trial by the content of the defendant's motion and by at least a portion of

---

[3]*Thomas* ended with a passage in which the court said that the search was also justified by "the police's right to search for concealed weapons" and then quoted a passage from *United States* v. *Robinson*, 414 U.S. 218, 234 (1973), setting forth the rationale for a search incident to an arrest. *Commonwealth* v. *Thomas*, 429 Mass. at 409. See G. L. c. 276, § 1. The Commonwealth argues that the closing statement in *Thomas* means that a strip search (and necessarily a visual body cavity search, for the court treated the two alike) was appropriate either when probable cause existed or when conducted incident to a lawful arrest. We do not read *Thomas* so broadly. Among other things, the court's entire discussion of probable cause would have been irrelevant if the search were justified simply because Thomas had been arrested. Moreover, an exception to the probable cause requirement for searches incident to an arrest would swallow up the requirement itself and in the process remove virtually all of the protective potential the requirement contains. By way of concrete example, such a reading of *Thomas* would expose every minor arrested for possession of alcohol to the possibility of a visual body cavity search. That cannot have been what the opinion in *Thomas* was suggesting.

[4]The Commonwealth argues that a thirteen-month delay between the end of the defendant's trial and imposition of his sentence was caused by the defendant's election to flee on the second day of his trial. The resulting delay

his examination of the Commonwealth's witnesses at the hearing. See *Commonwealth* v. *Figueroa*, 413 Mass. 193, 202 (1992); *Commonwealth* v. *Adams*, 421 Mass. 289, 293-294 (1995); *Commonwealth* v. *Hinckley*, 422 Mass. 261, 265 (1996); *Commonwealth* v. *Blake*, 49 Mass. App. Ct. 134, 135 (2000). See also *Griffith* v. *Kentucky*, 479 U.S. 314, 320-328 (1987).

Application of *Thomas*, in turn, requires suppression of the cocaine police discovered when the defendant removed his underwear. There simply was no probable cause for the strip search that occurred when the defendant was returned to the Chelsea police station. He had been arrested for two misdemeanors, neither of which involved small or easily concealed contraband. Indeed, as stated earlier, the motion judge found that Officer Borum did not even have "reason to suspect" that the defendant was in possession of drugs, and the Commonwealth does not challenge that finding. Police had searched the defendant twice before they placed him in the cruiser. The first search revealed a knife the defendant should not have been carrying because it was too big — not small and easily concealed — along with a bottle of cognac. The officer described the second search as "thorough" and conducted it to make certain that the defendant was carrying nothing in addition to what the officers had already found. That search produced nothing.

To be sure, the defendant's baggy pants and the fact that he was wearing shorts beneath them were likely impediments to a fully thorough search. Those baggy pants in fact were the reason Officer Borum stripped the defendant of all clothing. But

in commencement of appellate proceedings, the Commonwealth continues, meant that those proceedings were still in progress when *Thomas* was announced. From that, the Commonwealth, citing *Commonwealth* v. *Beauchamp*, 424 Mass. 682, 685-686 (1997), concludes that the defendant should not be able to avail himself of the principles *Thomas* contains. Reduced to essentials, the Commonwealth's argument centers on whether there is a causal connection between the defendant's flight and his ability to take advantage of *Thomas* or, put somewhat differently, whether *Thomas* would have been decided after conclusion of his appeal had he not fled. On the present record, we are unpersuaded that the defendant's flight caused extension of appellate proceedings past the date when *Thomas* was issued and conclude instead that *Thomas* likely would have been decided before the end of those proceedings even if the defendant had stayed where he was supposed to stay until his trial concluded. *Thomas* therefore applies to this appeal.

impediments to effective searches posed by bulky outerwear disappear when the outerwear disappears. Those impediments do not require, or even logically suggest, the need for removal of underwear.

In the last analysis, the "probable cause" requirements of *Thomas* occupy a very small place. They do not prevent police from conducting a search incident to an arrest, or a booking inventory search, or any other brand of search the law many permit under the evolving circumstances police frequently encounter. *Thomas* does, however, impose the following extremely important brake on the scope of each of those searches: before police may command removal of an arrested person's last layer of clothing, they must have probable cause to believe — i.e., "the facts and circumstances within the[ir] knowledge . . . [must be] enough to warrant a prudent person in believing," *Commonwealth* v. *Santaliz*, 413 Mass. 238, 241 (1992), quoting from *Commonwealth* v. *Storey*, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980) — that they will find a weapon, contraband, or the fruits or instrumentalities of criminal activity that they could not reasonably expect to discover without forcing the arrested person to discard all of his or her clothing. See generally, e.g., *State* v. *Bush*, 65 Ohio App. 3d 560, 563-564 (1989); *Hughes* v. *Commonwealth*, 31 Va. App. 447, 460-461 (2000).

The judgments are reversed and the verdicts are set aside; the order denying the defendant's motion to suppress is vacated and an order shall be entered allowing that motion; and the case is remanded for such further proceedings as may be consistent with this opinion.

*So ordered.*