NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

14-P-1150                                          Appeals Court

COMMONWEALTH vs. TYRONE VICK.

No. 14-P-1150.

Suffolk.     September 7, 2016. - November 8, 2016.

Present: Kafker, C.J., Milkey, & Blake, JJ.

Controlled Substances. Practice, Criminal, Motion to suppress. Constitutional Law, Investigatory stop, Reasonable suspicion, Probable cause, Search and seizure. Search and Seizure, Reasonable suspicion, Probable cause, Body examination. Probable Cause.

Indictments found and returned in the Superior Court Department on June 7, 2007.

A pretrial motion to suppress evidence was heard by Charles J. Hely, J., and the cases were tried before Judith Fabricant, J.

Genevieve K. Henrique for the defendant.
Nicholas Brandt, Assistant District Attorney, for the Commonwealth.

KAFKER, C.J. The defendant, Tyrone Vick, was convicted of possession of a class B substance, see G. L. c. 94C, § 34, following a jury trial. He appeals, arguing that the motion

judge erred in denying the defendant's motion to suppress evidence seized as the result of a stop, a search at the scene, and a search at the police station.[1]  The search at the police station involved the use of force to pull down the defendant's pants and to remove a plastic bag containing drugs (which an officer had felt during the search at the scene) protruding from his buttocks.  On appeal, the defendant claims that (1) the motion judge erred by failing to resolve conflicting testimony regarding material facts;[2] (2) the search at the police station constituted a manual body cavity search not supported by a warrant issued by a judge, as required by Rodriques v. Furtado, 410 Mass. 878, 888 (1991); and (3) the police station search, even if characterized as a strip or visual body cavity search, was unreasonably conducted, particularly because it was performed in violation of a Boston police department policy requiring a warrant for the use of force to effectuate such a search.  We affirm.

---

[1] A single justice of the Supreme Judicial Court denied the defendant's application for leave to pursue an interlocutory appeal.  See Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996).

[2] The defendant claims that the failure to resolve the conflicting testimony requires a remand for further findings, and that only after the further findings resolve the conflicts can we determine whether the stop and the subsequent searches were constitutionally justified.  We discuss the testimony, the stop, and the searches infra.

Background.  "We summarize the facts found by the motion judge following the evidentiary hearing, supplemented where necessary with undisputed testimony that was implicitly credited by the [motion] judge."  Commonwealth v. Oliveira, 474 Mass. 10, 11 (2016).  On May 9, 2007, at approximately 6:00 P.M., Boston police Officers Peter Cazeau and Linda Stanford, both in uniform, were on patrol in a marked cruiser near the intersection of Stuart and Tremont Streets, in an area of Boston known for illegal drug activity.  Cazeau observed another officer on foot and approached him in the cruiser.  The officer informed Cazeau that a woman had reported several males acting suspiciously in a nearby alley.  Cazeau and Stanford observed two men exit the alley.  Both recognized one of the men as Anthony Cianci, an individual with several prior drug arrests.[3] Cianci entered the passenger seat of a vehicle parked illegally in a crosswalk on Tremont Street.  The defendant was in the driver's seat of the vehicle.

Cazeau and Stanford waited for the vehicle to move out of the crosswalk.  When the vehicle remained, Cazeau issued a parking citation.  While placing the citation on the windshield, Cazeau observed the defendant with his pants down around his knees, underpants pulled to the side, and penis exposed.  Cianci

_____

[3] Officer Cazeau had arrested Cianci in the past.  Officer Stanford had had "numerous" prior encounters with Cianci in the course of her duties.

was facing the defendant. Cazeau, intending to arrest one or both of the individuals for engaging in sexual conduct for a fee, see G. L. c. 272, § 53A, indecent exposure, see G. L. c. 272, § 53(a), or open and gross lewdness, see G. L. c. 272, § 16, told both of the individuals not to move their hands. Cazeau ordered Cianci out of the vehicle and searched him. Cazeau recovered a pipe containing white residue, later determined to be "crack" cocaine, from Cianci's pocket. Stanford radioed for backup.

When Officer Steven Green arrived, he ordered the defendant to the back of the vehicle and searched him for weapons. During the search, Green felt a hard object in the cleft of the defendant's buttocks. When Green touched the object, the defendant tightened the muscles of his buttocks and "pulled away." The defendant violently resisted the remainder of the search, prompting the officers to handcuff him. The defendant continued to thrash around and refused to spread his legs. The officers placed him in the back of a cruiser to transport him to the police station. While in the cruiser, the defendant continued to fidget and to flail, attempting to get his cuffed hands down the back of his pants. He was found with a handcuff key on his wrist band. A drug-sniffing dog was brought to the

scene and the dog alerted to the presence of drugs in the defendant's vehicle.[4]

At the station, the defendant was placed in a holding cell while Officer Green obtained permission from his supervisor to conduct a strip search. Green then informed the defendant that he had authorization to conduct a strip search, but that it would not be necessary if the defendant removed the object from his buttocks voluntarily. When the defendant refused, two officers attempted to remove his pants. The defendant resisted forcefully, prompting three or four more officers to enter the cell to assist. With the defendant on the ground, the officers were able to remove his pants and see the object between his buttocks, which Green immediately recognized as crack cocaine wrapped in a plastic bag.[5] Green "brushed" or "flicked" the object with his fingers and it "popped out on the ground," according to his testimony. The motion judge found that Green, "[w]ithout manipulating the defendant's body, . . . grabbed the bag and pulled it out from between the defendant's buttocks." The motion judge further found that the "bag came out easily without any significant pulling force" and "without any touching or probing of [the defendant's] body cavities." The defendant

---

[4] No drugs were found in the area where the dog alerted.

[5] The bag contained several smaller bags with crack cocaine in them.

was charged with possession of a class B substance with intent to distribute, subsequent offense, G. L. c. 94C, § 32A(b); committing a drug violation in a school zone, G. L. c. 94C, § 32J; and resisting arrest, G. L. c. 268, § 32B.

Standard of review. "'In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error,' and we defer to the judge's determination of the weight and credibility to be given to oral testimony presented at a motion hearing. . . . We conduct an independent review of the judge's application of constitutional principles to the facts found." Commonwealth v. Hoose, 467 Mass. 395, 399-400 (2014), quoting from Commonwealth v. Contos, 435 Mass. 19, 32 (2001). The judge's resolution of conflicting testimony "invariably will be accepted." Commonwealth v. Ortiz, 435 Mass. 569, 578 (2002).

Discussion. 1. The stop. To justify an investigatory stop under the Fourth Amendment to the United States Constitution or art. 14 of the Massachusetts Declaration of Rights, "the police must have 'reasonable suspicion' that the person has committed, is committing, or is about to commit a crime. Reasonable suspicion must be 'based on specific, articulable facts and reasonable inferences therefrom.'" Commonwealth v. Costa, 448 Mass. 510, 514 (2007) (citations omitted). See Terry v. Ohio, 392 U.S. 1, 21 (1968). A person

is seized when "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Commonwealth v. Isaiah I., 450 Mass. 818, 821 (2008). See United States v. Mendenhall, 446 U.S. 544, 554 (1980).

Officer Cazeau effectuated a stop of the defendant when he ordered the defendant not to move his hands. See Isaiah I., 450 Mass. at 822 (suspect seized when officer ordered him not to move). The defendant claims that Cazeau's order was not supported by reasonable suspicion that the defendant had committed, was committing, or was about to commit a crime. Specifically, he argues that, because the testimony of Cazeau, Stanford, and Green conflicted in several respects, the motion judge left several facts material to this determination unresolved. We disagree.

Although the testimony of Cazeau, Stanford, and Green conflicted in some respects, their testimony did not differ on the points material to the reasonable suspicion analysis, as the motion judge aptly noted.[6] Cazeau testified that he saw the

---

[6] The defendant points to the following inconsistencies in the testimony of Cazeau, Stanford, and Green, in arguing that Cazeau's stop was not supported by reasonable suspicion: (1) Cazeau testified that the defendant was already in his vehicle when Cianci entered it, whereas Stanford testified that the defendant and Cianci got into the defendant's vehicle together; (2) Cazeau testified that he parked the cruiser behind the defendant's vehicle, whereas Stanford testified that Cazeau

defendant with his pants down to his knees, underwear to the side, and penis exposed. This observation gave Cazeau probable cause to believe that the defendant was committing the crime of indecent exposure, G. L. c. 272, § 53(a).[7] See Commonwealth v. Fitta, 391 Mass. 394, 396 (1984) (offense requires "an intentional act of lewd exposure, offensive to one or more persons" [citation omitted]).[8] See also G. L. c. 272, § 54 (authority to arrest for offense). Officer Stanford's testimony did not contradict this statement. Although Stanford did not state that she also saw the defendant with his pants down and his penis exposed, she was never directly asked whether she had.

---

parked the cruiser next to the vehicle; (3) Cazeau testified that he issued the parking citation around 6:00 P.M., whereas Stanford testified that she was the one who issued the parking citation, at 6:25 P.M.; (4) Cazeau testified that he approached the defendant's vehicle first, whereas Stanford testified that they both approached the vehicle at the same time; and (5) Stanford testified that she ordered the defendant out of the vehicle, whereas Green testified that he ordered the defendant out of the vehicle. Despite these apparent inconsistencies, the motion judge found the testimony of Cazeau, Stanford, and Green to be "truthful and reliable on the material points."

[7] The defendant was also parked illegally, which further justifies the stop. See G. L. c. 90C, § 2 (officer may approach parked car committing traffic violation and issue ticket); Commonwealth v. Bacon, 381 Mass. 642, 644 (1980) (officer may validly stop vehicle committing traffic violation); Commonwealth v. Cruz, 459 Mass. 459, 465 (2011) ("It is uncontested that the officers validly 'stopped' the car for parking in front of a fire hydrant, a civil traffic violation").

[8] At that particular time of day, the area of Tremont and Stuart Streets in Boston had a high volume of pedestrian and vehicular traffic.

The motion judge also found that Cazeau approached the defendant's vehicle before Stanford, which might explain why he saw the defendant with his pants down and his penis exposed, but she did not. Thus, Cazeau's observation, properly credited by the motion judge and uncontroverted by Stanford, established reasonable suspicion to stop the defendant. The motion judge therefore properly denied the defendant's motion to suppress evidence related to the stop.

2. The search at the scene. Officer Cazeau's observation of the defendant with his pants down and penis exposed also gave Cazeau probable cause to arrest the defendant for indecent exposure. "[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." Commonwealth v. Kennedy, 426 Mass. 703, 708 (1998), quoting from Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992). The fact that the defendant was not charged with indecent exposure does not alter this conclusion, contrary to the defendant's contentions. See, e.g., Commonwealth v. Lawton, 348 Mass. 129, 133 (1964) ("[i]f the facts known to the officer reasonably permitted a conclusion that probable cause existed

for [one charge], the arrest should be treated as legal even though he at first assigned another ground").[9]

Because the officers had probable cause to arrest the defendant, the search for weapons constituted a valid search incident to arrest. See G. L. c. 276, § 1; Chimel v. California, 395 U.S. 752, 762-763 (1969). Once an arrest occurs, "no additional justification is required for a search of the person for weapons that otherwise might be used to resist arrest or to escape, or to discover evidence of the crime for which the arrest was made." Commonwealth v. Prophete, 443 Mass. 548, 552 (2005). Police may search "the arrestee's person and the area 'within his immediate control.'" Chimel, supra at 763. Such a search may precede formal arrest as long as probable cause exists for the arrest and the arrest and the search are "roughly contemporaneous." Commonwealth v. Washington, 449 Mass. 476, 481 (2007). Thus, the motion judge properly denied the defendant's motion to suppress evidence related to the search at the scene.

3. The nature of the police station search. In determining the legality of the search at the police station, we

_____

[9] See also Barna v. Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994) ("Probable cause need only exist as to any offense that could be charged under the circumstances" [emphasis supplied]); Sennett v. United States, 667 F.3d 531, 537 (4th Cir. 2012) ("[T]he fact that a suspect is never charged with an offense does not conclusively establish that officers did not have probable cause to arrest for the offense").

must consider the differences between three types of searches: strip searches, visual body cavity searches, and manual body cavity searches.  "[A] strip search generally refers to an inspection of a naked individual, without any scrutiny of his [or her] body cavities."  Prophete, 443 Mass. at 556, quoting from Commonwealth v. Thomas, 429 Mass. 403, 407 n.4 (1999).  A strip search also may occur "when a detainee remains partially clothed, but in circumstances during which a last layer of clothing is moved (and not necessarily removed) in such a manner whereby an intimate area of the detainee is viewed, exposed, or displayed."  Commonwealth v. Morales, 462 Mass. 334, 342 (2012).  A visual body cavity search involves "a visual inspection of the anal and genital areas."  Prophete, supra, quoting from Thomas, supra.  A manual body cavity search "involves some degree of touching and probing of body cavities."  Thomas, supra at 408.

To conduct a strip or a visual body cavity search, police must have probable cause to believe that "they will find a weapon, contraband, or the fruits or instrumentalities of criminal activity that they could not reasonably expect to discover without forcing the arrested person to discard all of his or her clothing."[10]  Prophete, supra, quoting from

------

[10] "This standard is more stringent than the standard for such searches set forth under the Fourth Amendment to the United States Constitution, which is reasonable suspicion.  See Bell v.

Commonwealth v. Ramirez, 56 Mass. App. Ct. 317, 323 (2002).

"This is so because strip or visual body cavity searches, by their very nature, are humiliating, demeaning, and terrifying experiences that, without question, constitute a substantial intrusion on one's personal privacy rights protected under the Fourth Amendment and art. 14 [of the Massachusetts Declaration of Rights]."  Morales, 462 Mass. at 339-340, quoting from Prophete, supra at 553.

Manual body cavity searches constitute an even greater intrusion on a person's privacy rights and, as such, additional protections are required.  See Thomas, supra.  Under Schmerber v. California, 384 U.S. 757, 770 (1966), searches that intrude into a person's body require a warrant unless exigent circumstances exist.  In Massachusetts, a judicially authorized warrant based on "a strong showing of particularized need supported by a high degree of probable cause" is required for a manual body cavity search.  Rodriques, 410 Mass. at 888.

The defendant claims that he was subjected to a warrantless manual body cavity search when Officer Green observed and removed the bag of drugs from the cleft of the defendant's buttocks.  The motion judge found, however, that the bag could be observed and removed "[w]ithout manipulating the defendant's

---

Wolfish, 441 U.S. 520, 559 (1979)."  Morales, 462 Mass. at 339 n.3.

body," and "without any touching or probing of [his] body cavities." The judge also found that when Officer Green "grabbed the bag and pulled it out from between the defendant's buttocks," it "came out easily without any significant pulling force."[11] According to Green's testimony, credited by the motion judge, the bag was in the "cleft" of the defendant's buttocks, and not lodged in his rectum.[12] We conclude that the search, on

_____

[11] The defendant does not challenge these findings as clearly erroneous.

[12] Officer Green testified as follows:

Counsel:  "Did anything out of the ordinary happen while you were patting [the defendant] down?" . . .

Green:  "[W]hen I got to . . . his backside, I felt something that was, it felt like it was situated like in the . . . cleft of his buttocks." . . .

Counsel:  "And did you eventually retrieve the item that you had felt?"

Green:  "Yeah, when we got his pants off you could see it was visible in the, like I said, the cleft of his buttocks." . . .

Counsel:  "Did you have to enter any sort of body cavity in order to retrieve th[e] item?"

Green:  "No."

Counsel:  "Was any portion of th[e] item within [the defendant's] rectum or within any sort of orifice of his body?"

Green:  "No." . . .

Counsel:  "Did you have to use force to get the bag out of any sort of body cavity or anything like that?  Did you have to manipulate any sort of orifices or cavities?"

these particular facts, is best characterized as a strip or visual body cavity search, not a manual body cavity search, as there was no touching or probing or otherwise opening or manipulating of the defendant's anal cavity, and the bag of drugs was easily removed without in any way endangering the defendant's health or safety. See Thomas, 429 Mass. at 405, 407-408 (strip and visual body cavity searches, not manual body cavity search, occurred where defendant was stripped and asked to bend over, and drugs in plastic bag protruding from his buttocks were removed without endangering his health or safety). See also Prophete, 443 Mass. at 551, 555-557 (where defendant's pants but not underwear were removed and drugs immediately fell out from his buttocks, no strip search or visual or manual body cavity search occurred); Morales, 462 Mass. at 338, 341 (officer's action of lifting back defendant's waistband to retrieve bag of drugs from his buttocks, thus publicly exposing his buttocks, constituted strip search). Contrast Commonwealth v. Amado, 474 Mass. 147, 148 (2016) ("pulling the defendant's clothing away from his body, shining a flashlight inside the clothing, and removing an object from his buttocks" deemed unlawful strip search because search occurred after police had

---

Green: "No."

dispelled safety concerns and no probable cause to believe

defendant concealing drugs).[13]

Because the search did not constitute a manual body cavity

search, the officers only needed probable cause to believe that

the defendant had concealed drugs in his buttocks area to

justify the search.  See Prophete, 443 Mass. at 556.  Probable

cause existed because (1) Officer Green felt an object in the

---

[13] A review of cases from other jurisdictions reveals conflicting interpretations of whether the removal of drugs from a defendant's buttocks constitutes a visual or a manual body cavity search, and whether a warrant is required for the removal of the drugs.  Compare Paulino v. State, 399 Md. 341, 352-354 (2007) (spreading of defendant's "butt cheeks" did not render search manual body cavity search); United States v. Scott, 987 A.2d 1180, 1185 (D.C. App. Ct. 2010) (plastic bag protruding from anal cavity; "where, as here, a lawful strip search reveals evidence that can be removed from the outer surface of the arrestee's body without posing any threat to the arrestee's health or safety, the Fourth Amendment permits the police to seize that evidence immediately, without interrupting the search procedure to obtain a warrant"); McGee v. State, 105 S.W.3d 609, 613, 615 (Tex. Crim. App. 2003) (removal of drugs from anal cavity "without digitally probing the anus" constituted visual body cavity search);  Craddock v. Commonwealth, 40 Va. App. 539, 550-551 (2003) (removal of drugs from resisting arrestee's anal cavity did not constitute manual body cavity search when officer did not have to pull bag out from buttocks), with People v. Hall, 10 N.Y.3d 303, 311 (2008) (string hanging from defendant's rectum connected to drugs; "[i]f an object is visually detected . . . , Schmerber dictates that a warrant be obtained before conducting a body cavity search unless an emergency situation exists. . . .  [T]he removal of an object protruding from a body cavity, regardless of whether any insertion into the body cavity is necessary, is subject to the Schmerber rule and cannot be accomplished without a warrant unless exigent circumstances reasonably prevent the police from seeking prior judicial authorization"); Hughes v. Commonwealth, 31 Va. App. 447, 453 (2000) (removal of plastic bag containing cocaine protruding "halfway" from anal cavity constituted manual body cavity search).

cleft of the defendant's buttocks during the search, which Green surmised from his thirty years of experience was drugs; (2) the defendant tightened the muscles of his buttocks and pulled away when Officer Green touched the object; (3) the defendant resisted forcefully during the remainder of the search at the scene; (4) the defendant attempted to reach the object in the cruiser; (5) the defendant was with a known drug user, recognized by all three officers, who had what they believed to be a crack pipe on his person;[14] (6) the defendant was in an area known for illegal drug activity, where Officer Cazeau had made numerous drug arrests in the past; and (7) a drug-sniffing dog alerted in the defendant's vehicle.

4. <u>The reasonableness of the police station search</u>. Even when probable cause exists to support a strip or a visual body cavity search, the search must also "be reasonably conducted." <u>Morales</u>, 462 Mass. at 342. Strip searches and visual body cavity searches may be unconstitutional notwithstanding lawful arrest "because they involve inspections of such a highly personal nature, or are conducted in such a manner, as to constitute an unreasonable intrusion on an individual's privacy." <u>Prophete</u>, 443 Mass. at 554. "Courts must consider the scope of the particular intrusion, the manner in which it is

---

[14] Officer Cazeau told Officer Stanford about the crack pipe that he recovered from Cianci.

conducted, . . . and the place in which it is conducted." Bell v. Wolfish, 441 U.S. 520, 559 (1979). "How a search is conducted is of the utmost importance, with the least amount of intrusion constituting the better practice." Morales, supra at 343.

The defendant further argues that the search was unreasonably conducted because the officers used force to effectuate the search without a warrant, in violation of the written policies of the Boston police department. Rule 318D of the Boston police department rules and procedures provides, in relevant part: "In no event shall force be applied to accomplish a strip search and/or visual body cavity search unless authorized by a warrant." A violation of a police department's written policy, however, is not determinative in the reasonableness of a search; it is only one factor in the analysis.[15] Id. at 343 n.9 ("While developing a written policy concerning when and how to conduct a visual body cavity search and a strip search may be helpful to police officers and may

---

[15] One exception is in the context of inventory or impoundment searches. See, e.g., United States v. Proctor, 489 F.3d 1348, 1356 (D.C. Cir. 2007) ("if a standard impoundment procedure exists, a police officer's failure to adhere thereto is unreasonable and violates the Fourth Amendment"). However, the United States Supreme Court has specifically stated that inventory searches must be conducted "according to standardized criteria." Colorado v. Bertine, 479 U.S. 367, 387 (1987). No similar rule exists in the context of strip searches or visual body cavity searches.

serve to guard against unnecessary intrusions, compliance with such a policy is not determinative on the issue of reasonableness but, rather, serves only as one factor in the equation").[16]  See Prophete, 443 Mass. at 557; Ramirez, 56 Mass. App. Ct. at 319.[17]

In the present case, the other factors in the reasonableness analysis outweigh the officers' failure to obtain a warrant before using force to effectuate the strip and the visual body cavity searches.  First, as previously discussed, there was a high level of probable cause that the defendant was concealing drugs in his buttocks.  See Morales, 462 Mass. at 342 n.8.  Despite the obvious presence of the bag, however, the

---

[16] Application of the exclusionary rule is generally reserved for cases in which the conduct of the police was in violation of a person's constitutional rights.  See Whren v. United States, 517 U.S. 806, 815 (1996) (Court declined to apply exclusionary rule because police acted reasonably, notwithstanding that stop violated police regulations).  Cf. Commonwealth v. Grimshaw, 413 Mass. 73, 77 (1992) ("Generally, evidence seized in violation of the law will be suppressed only if the violation is substantial or rises to the level of a Federal or State constitutional violation").

[17] See also Doe v. Burnham, 6 F.3d 476, 480 (7th Cir. 1993) ("[J]ust because Illinois chooses to regulate police behavior in a certain way does not mean the police officers violate the Constitution by transgressing those rules"); McCormick v. Lawrence, 278 Kan. 797, 805 (2005) ("[A] strip search or body cavity search could violate [Kansas statute] without being unreasonable under the Fourth Amendment"); State v. Rainford, 86 Wash. App. 431, 434 (1997) (dry cell search did not comport with prison regulations; failure to follow procedure not "per se violation" of due process clause "or any other constitutional provision").

defendant twice denied concealing anything in his buttocks. See Amado, 474 Mass. at 156 ("[A] denial, especially an absurd one, may heighten an officer's suspicion"). The defendant also made continuous attempts to reach the bag and was found with a handcuff key on his wristband, thereby revealing his intention and determination to secure the drugs himself.

The search was also conducted in a manner designed to preserve as much as possible the defendant's privacy and dignity. Officer Green gave the defendant the opportunity to remove the plastic bag himself, which would have avoided the strip search. The search was conducted in a private holding cell at the police station, with no other suspects in the cell. See Morales, 462 Mass. at 342-343 ("a private room is preferable"). The officers did not touch, probe, otherwise open, or even peer into the defendant's body cavity. Initially, there were only three officers involved in the search, and their presence was likely necessary due to the defendant's previous resistance to the search. See Thomas, 429 Mass. at 409 n.5 ("[T]he searches should always be done where no one, other than the investigating officer or officers, can see the person being searched"). All of these officers were male -- the same gender as the defendant. See Morales, supra at 343 ("Whether a person of the same gender conducts the search should be given consideration"). Additional officers only rushed into the cell

due to the defendant's continued resistance.  The officers also used no more force than necessary to safely obtain the drugs. Officer Green merely "flicked" or "brushed" the drugs out of the defendant's buttocks.  The entire struggle only lasted "a minute or two."

Although there were no exigent circumstances excusing the failure to obtain a warrant, a warrant was not constitutionally required.  See Schmerber, 384 U.S. at 770; Prophete, 443 Mass. at 556.  Moreover, the use of force was not excessive to the point of rendering the search unreasonable.  See Commonwealth v. Garner, 423 Mass. 735, 738 (1996) (execution of searches subject to "general strictures against unreasonable searches"); Commonwealth v. Williams, 439 Mass. 678, 686 (2003) ("[L]aw enforcement personnel are authorized to use reasonable force, and no more, to execute warrants and carry out lawful orders"). See also Michenfelder v. Sumner, 860 F.2d 328, 336 (9th Cir. 1988) ("the legitimate penological purpose of strip searches -- to discover hidden weapons and contraband -- justifies using force necessary to induce compliance by difficult inmates"); Craddock v. Commonwealth, 40 Va. App. 539, 550-551 (2003) (removal of drugs from resisting arrestee's anal cavity -- without having to pull on bag -- did not render strip search unreasonable).  We therefore conclude that the manner of the strip and the visual body cavity searches was reasonable.  As

such, the motion judge properly denied the defendant's motion to suppress evidence resulting from the police station search.

Judgment affirmed.