594 A.2d 1050 (1991)
Valiant A. WASHINGTON, a/k/a Alexander Washington, Appellant,
v.
UNITED STATES, Appellee.
No. 90-716.
District of Columbia Court of Appeals.
Submitted February 4, 1991.
Decided February 28, 1991.[*]
Charles F. Stow, III, for appellant.
Jay B. Stephens, U.S. Atty., with whom John R. Fisher, Elizabeth Trosman, James R. Costello, and Robert A. De La Cruz, Asst. U.S. Attys., were on the brief, for appellee.
Before FERREN, BELSON and FARRELL, Associate Judges.
FERREN, Associate Judge:
On October 13, 1989, after a pretrial hearing, the motions court denied appellant's motion to suppress evidence seized incident to his arrest. On March 5, 1990, a jury found appellant guilty of heroin possession with intent to distribute, D.C.Code § 33-541(a)(1) (1988). Appellant contends the motions court erred in denying his motion to suppress because (1) the tip from a paid police informant could not form the basis for probable cause to arrest unless the reliability of the tipster was further established and the officers corroborated the tip by more than a few innocent details, and (2) the strip and body cavity search conducted at the police station violated police procedures and shocked the conscience, thereby depriving appellant of due process. For purposes of this order we assume, without deciding, that the tip from the police informant, in the context of all surrounding *1051 circumstances, supplied the basis for probable cause to arrest and that the search incident to the arrest at the scene did not violate Fourth Amendment rights. On this record, however, we cannot resolve the second issue. Because the motions court did not make findings of fact or conclusions of law regarding appellant's strip and body cavity search at the police station, we remand the record to the motions court for further proceedings in accordance with this order.

I.
For the government, Officer Leech testified that, after corroborating an allegedly reliable tip that appellant had narcotics hidden in his pants, appellant was arrested, patted down without a strip search, and taken to the police station. At the station, the police pulled down appellant's pants. According to Officer Leech, appellant "was observed visibly to clench and tighten his buttocks area. He was told to relax ... He still kept his buttocks in a clenched manner." Leech added: "He was, at that time, struggling with the officers. He was placed face down on the floor of the station and at that time Officer Queen forced his buttocks apart and he could see just between the cheeks the piece of brown paper which contained seven quart[er]s, apparently, of heroin." Appellant's counsel attempted to ask if "a stapler was used at all in" the search, but the motions court ruled that this line of questioning was irrelevant to the lawfulness of the search. The court also dismissed as irrelevant counsel's attempts to determine from Officer Leech whether the search involved a further body cavity search and whether established police procedures were followed.
Appellant then testified that Officer Leech conducted a strip and squat search on the street. Appellant added that at the police station, with his arms handcuffed behind his back, he was forced to the floor and held there by several officers while one officer "had a little staple gun and he was stapling, all right, open it up, open your ass up." The motions court sustained the government's objection to further questioning along this line. The court ruled this questioning irrelevant; "[i]f the arrest was valid, then the search is okay." The court, however, permitted appellant to submit a written proffer for appellate purposes. On the basis of the record without appellant's proffer, the motions court credited Officer Leech's testimony and ruled that appellant's arrest and search were lawful.

II.
In his written proffer of October 17, 1989, appellant contends:
The search at the police station was carried out by the arresting officers knocking the defendant to the floor by kicking the defendant in the back of his legs while his hands were handcuffed behind his back and then holding the defendant face down on the floor by way of one of the officers positioning his knee on the back of the defendant's neck. At that point, the searching officers removed the defendant's pants and underwear, spread his legs apart, and attempted to pry apart his buttocks cheeks by the use of an office desk stapler. When the officers were unsuccessful in prying the defendant's buttocks cheeks apart, they used the stapler to strike the defendant's testicles which resulted in the police officer's being able to pry the defendant's buttocks cheeks apart and remove alleged controlled substances from that area. Following the removal of the alleged controlled substances from the cheeks of his buttocks, one of the police officers put on a rubber surgical glove and inserted one of his fingers into the rectum of the defendant in an apparent search for further contraband.
These allegations were not before the motions court when it ruled appellant's search was lawful (although counsel had attempted to present this relevant information to the court in timely fashion).
"It has long since ceased to be true that due process of law is heedless of the means by which otherwise relevant and credible evidence is obtained." Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952) (forcible extraction *1052 of stomach's contents "too close to the rack and the screw" to survive due process challenge). Similarly, to survive a Fourth Amendment challenge, searches must be reasonable. This
requires a balancing of the need for the particular search against the invasion of the personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.
Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). The United States Court of Appeals for the Eleventh Circuit has isolated three factors which "contribute to the personal indignity endured by the person searched: (1) physical contact between the searcher and the person searched; (2) exposure of intimate body parts; and (3) use of force." United States v. Vega-Barvo, 729 F.2d 1341, 1346 (11th Cir.), cert. denied, 469 U.S. 1088, 105 S.Ct. 597, 83 L.Ed.2d 706 (1984).
Generally, the more intrusive the search, the greater the amount of suspicion necessary to justify the search. In Morgan v. Barry, 596 F.Supp. 897 (D.D.C.1984), the federal district court prohibited the strip or squat search of arrested individuals in the absence of "reasonable suspicion that a weapon, contraband or evidence of a crime are concealed on the person or in the clothing of the arrestee which the District or its agents reasonably believe can only be discovered by a strip or squat search." Id. at 898.[1]Morgan did not state what level of suspicion is necessary to conduct a body cavity search.
The degree of suspicion and governmental need necessary to justify the indignity of a body cavity search has never been addressed in this jurisdiction. Rectal cavity "border searches" of suspected narcotics smugglers from Mexico, conducted by physicians in hospitals, have been held to be reasonable when based on a "clear indication" or "plain suggestion" that contraband was concealed in a body cavity. See United States v. Castle, 409 F.2d 1347, 1348 (9th Cir.1969), cert. denied, 396 U.S. 1063, 90 S.Ct. 760, 24 L.Ed.2d 757 (1970); Annotation, Propriety of Search Involving Removal of Natural Substance or Foreign Object From Body by Actual or Threatened Force, 66 A.L.R.FED. 119 (1984). On the other hand, a forcible body cavity search occurring in a non-antiseptic and non-hygienic atmosphere with "the unjustified element of personal risk of infection and pain" has been held to violate the Fifth Amendment. Huguez v. United States, 406 F.2d 366, 382 (9th Cir.1968).
The procedures of Metropolitan Police Department recognize the need for special protections in undertaking body cavity searches.[2] Metropolitan Police General Order 502.1, Processing Prisoners 3 (Apr. 13, 1979), provides in Section B(5):
Under no conditions shall a body cavity search be performed by members of the department. Should such an examination be required, the arrestee shall be transported to D.C. General Hospital, where the examination shall be performed by a physician. *1053 Similarly, Metropolitan Police Special Order, Series 85, Number 51, Searching Prisoners (Dec. 18, 1985), requires that a body cavity search "be conducted only at a medical facility under the direction of a physician."
We need not decide at present whether these police orders, or the lower federal court decisions cited above, set forth the constitutional standard governing strip or body cavity searches. It is enough to recognize that searches incident to a valid arrest can be unconstitutional when the scope of the search is unjustified and the method used shocks the conscience. In this case, we cannot tell whether the trial court's "judgment is plainly wrong or without evidence to support it." D.C.Code § 17-305(a) (1989); see Davis v. United States, 564 A.2d 31, 35 (D.C.1989) (en banc). The motions court refused to consider appellant's evidence of a forcible body cavity search and declined to permit appellant's counsel to cross-examine Officer Leech regarding the extent of the search at the police station. We therefore remand the record to the motions court for findings of facts and conclusions of law on the second issue presented on appeal: the constitutionality of the alleged strip search and body cavity search at the police station.
Record Remanded.
NOTES
[*] The decision in this case was originally issued as an unpublished Memorandum and Order. It is now being published by direction of the court.
[1] In response to Morgan, the Metropolitan Police Department issued Special Order, Series 85, Number 51, Searching Prisoners (Dec. 18, 1985), which defined "strip search" as "having an arrested person remove or arrange some or all of his/her clothing so as to permit a visual inspection of the genitals, buttocks, anus, breasts, or undergarments of such person." A "squat search" is defined as "a search which requires an arrested person to crouch or squat while the prisoner's undergarments and other clothing are removed or arranged to expose the genital or anal area. This type of search permits contraband or other material concealed in the genital area to become visible or dislodged." The Special Order requires the watch commander to authorize a strip, squat, or body cavity search and orders each such search to be detailed in a written log. The order reiterates the Morgan ruling that strip or squat searches may be performed only if there is reason to believe the prisoner possesses a weapon, contraband, or evidence of a crime that cannot be discovered without such a search.
[2] A "body cavity" search is defined as "entering an arrestee's genital and/or anal cavities in order to retrieve contraband, weapons, or evidence of a crime which may be concealed within these areas." Metropolitan Police Special Order, Series 85, Number 51, Searching Prisoners (Dec. 18, 1985).