ROGERS, Circuit Judge,
concurring in part and concurring in the judgment.
I write principally because this court, as in ten other circuits, should “clearly establish! ],” Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), that indiscriminate strip searching of individuals awaiting presentment on non-violent, non-drug offenses who are not held in the general population is unconstitutional under the Fourth Amendment to the United States Constitution in the absence of reasonable suspicion an individual possesses contraband or weapons. See Bame v. Dillard, 637 F.3d 380, 388 (D.C.Cir.2011) (Rogers, J., dissenting).
*1206 I.
In the absence of en banc review, Bame, 637 F.3d 380, is the law of the circuit, see LaShawn A. v. Barry, 87 F.3d 1389, 1395 (D.C.Cir.1996) (en banc). In Bame, the court applied the doctrine of constitutional avoidance and did not decide whether a Fourth Amendment violation occurred. See Bame, 637 F.3d at 384 (citing Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)); cf. Op. at 1202. Since Bame was decided the Supreme Court in Camreta v. Greene, — U.S. -, 131 S.Ct. 2020, 179 L.Ed.2d 1118 (2011), has underscored the undesirability of the “flexibility,” Op. at 1202, afforded to courts under Pearson v. Callahan to avoid deciding whether a constitutional violation has occurred where the defendant is entitled to qualified immunity. Not deciding the constitutional question “threatens to leave standards of official conduct permanently in limbo.” Camreta, 131 S.Ct. at 2031. By proceeding directly to the immunity question, not only do “[ejourts fail to clarify uncertain questions, fail to address novel claims, fail to give guidance to officials about how to comply with legal requirements,” id., but the failure to decide constitutional questions “may frustrate ‘the development of constitutional precedent’ and the promotion of law-abiding behavior,” id. (quoting Pearson, 555 U.S. at 237, 129 S.Ct. 808).
Also since Bame, six Justices of the Supreme Court have expressed unease with the type of indiscriminate strip searching engaged in by the Superior Court Marshal’s Office that is challenged here and was challenged in Bame. See Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington, — U.S. -, 132 S.Ct. 1510, 1523, 182 L.Ed.2d 566 (2012) (Roberts, CJ., concurring); id. at 1524 (Al-ito, J., concurring); id. at 1525 (Breyer, J., joined by Ginsburg, Sotomayor, and Ka-gan, JJ., dissenting). The Supreme Court’s expression of unease is not new, appearing even in the context of post-arraignment defendants held in the general prison population. See Bell v. Wolfish, 441 U.S. 520, 558, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (“[T]his practice instinctively gives us the most pause.”).
Nearly every other circuit court of appeals (and the District of Columbia’s highest court, see United States v. Scott, 987 A.2d 1180, 1196-97 (D.C.2010)) has understood that the humiliating and essentially non-productive practice of strip searching pre-arraignment arrestees not held in the general population is an unreasonable search under the Fourth Amendment in the absence of reasonable suspicion. See Bame, 637 F.3d at 391-92, 395 (Rogers, J., dissenting) (citing cases from the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuit Courts of Appeals); see Powell v. Barrett, 541 F.3d 1298, 1300-02 (11th Cir.2008) (en banc); Bull v. City and Cnty. of San Francisco, 595 F.3d 964, 980-81 (9th Cir.2010) (en banc). , The Third Circuit has yet to address the issue, rejecting only a Fourth Amendment challenge to blanket strip searches upon arrestees admission to the general jail population. See Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington, 621 F.3d 296, 298-99, 311 (3d Cir.2010). Evidence before the courts and in the instant case confirms that modern technology and law enforcement experience have shown that indiscriminate strip searching of non-violent, non-drug pre-ar-raignment arrestees after the use of metal detectors and patdowns to locate contraband rarely yields additional security benefits. See, e.g., Roberts v. State of R.I., 239 F.3d 107, 112 (1st Cir.2001); see id. (citing cf. Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1272-73 (7th Cir.1983)); Appellants’ Ex. 410 (compiling incident reports). Contrary court findings involve the prison environment where smuggling of contra *1207 band “is all too common an occurrence” and deference is due to the policy judgments of prison administrators. Bell v. Wolfish, 441 U.S. at 559, 99 S.Ct. 1861; see also Florence, 621 F.3d at 310.
Members of the Fourth Amendment class here were not being held in the general population with post-arraignment arrestees and strip searches in their circumstances illustrate one aspect of the Justices’ unease in Florence, 132 S.Ct. at 1523, 1524, 1525. Applying the canon of constitutional avoidance in this circuit is unwarranted, particularly in view of the recurring court challenges to indiscriminate strip searching by the U.S. Marshals Service in the Nation’s Capital, the frequent situs of demonstrations as in Bame. See Helton v. United States, 191 F.Supp.2d 179 (D.D.C.2002); Clifton v. United States, No. 02-0578 (D.D.C. Mar. 26, 2002); see also Morgan v. Dist. of Columbia, No. 81-1419 (D.D.C. July 22, 1981), applied in Morgan v. Barry, 596 F.Supp. 897, 898-99 (D.D.C.1984). The United States advises that the U.S. Marshals Service has abandoned the challenged strip searching policy and practice. See Appellee Dillard Br. 59 n. 17; Op. at 1196-97. This does not ensure that the practice will not be revived, much less provide guidance for new policies and practices, promote law-abiding behavior, or justify the court in not “clearly establishing]” that the Fourth Amendment rights of the appellant class were violated by the Superior Court Marshal. Joining the ten other circuit courts of appeals, I would hold that the indiscriminate strip searching of the Fourth Amendment class in the absence of reasonable suspicion violated the Fourth Amendment.
II.
Otherwise, I generally agree that appellants’ claims fail.
A. The Superior Court Marshal is a federal official who was acting under color of federal law, and the District of Columbia cannot be held hable for the challenged actions of Marshal Dillard. Op. at 1200.
Somewhat less persuasive is the District of Columbia’s suggestion that it “had no choice,” Appellee D.C. Br. 41, not to turn over to the Superior Court Marshal for presentment individuals arrested by the Metropolitan Police Department, regardless of whether the Marshal’s strip searching practices violated the Fourth Amendment rights of non-violent, non-drug pre-arraignment arrestees. The District of Columbia can sue as well as be sued, see D.C.Code § 1-102, and can seek the aid of the courts to protect individuals in its custody. Appellants point to the District of Columbia’s obligation to ensure the enforcement of the order in Morgan v. Barry, 596 F.Supp. 897, 898 (D.D.C.1984), that barred its own officers from strip searching female arrestees housed at the District of Columbia Detention Facility in the absence of a “reasonable suspicion that a weapon, contraband or evidence of a crime are concealed on the person or in the clothing of the arrestee which the District [of Columbia] or its agents reasonably believe can only be discovered by a strip or squat search.” Cf. Washington v. United States, 594 A.2d 1050, 1052 (D.C.1991) (quoting MPD Gen. Order 502. 1, Processing Prisoners 3, § B(5) barring body cavity searches of arrestees by police officers). The District of Columbia did not seek such aid on behalf of the Fourth Amendment class, but at the time there was neither an outstanding order with respect to the Superior Court Marshal, nor a decision by this court (or the D.C. Court of Appeals), “clearly establishing]” that blanket strip searching of pre-arraignment arrestees like the Fourth Amendment class is unrea *1208 sonable and a violation of the Fourth Amendment.
B. With regard to the constitutional challenges, because Bame, 637 F.3d at 386, is the law of the circuit Marshal Dillard is entitled to qualified immunity on the Fourth Amendment claims. Op. at 1202. Given appellants’ agreement that Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), is controlling at the summary judgment stage of the proceedings, Op. at 16, the Fifth Amendment claims fail for lack of evidence of a constitutional violation. Op. at 1205.
In that regard, the court observes that Marshal Dillard was “largely missing in action throughout the class period.” Op. at 1204. Although Dillard agreed that there was no reason to treat male and female arrestees differently, see Dillard Dep. 77:1-7, on his watch his deputies indiscriminately strip searched only women. Op. at 1197. Summary judgment presents no occasion for the court to weigh the evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A reasonable jury could find that knowing acquiescence to continuing violations of a plaintiffs Equal Protection rights by one’s deputies amounts to purposeful conduct and infer, in the absence of a legitimate non-invidious reason for treating women differently than men, a defendant’s discriminatory purpose. Cf. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266-67, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); cf. also Primas v. Dist. of Columbia, 719 F.3d 693, 697-98 (D.C.Cir.2013); Evans v. Sebelius, 716 F.3d 617, 620-22 (D.C.Cir.2013). Dillard repeatedly swore, however, that he believed men and women were being strip searched in the same manner, see Dillard Dep. 96:10-97:8, 99:8-101:12, and the Fifth Amendment class fails to proffer evidence from which a reasonable jury could find that he had a women-only strip search policy or knew of the disparate treatment by his deputies. Op. at 1204-05. Absent evidence that Dillard either had a blanket policy for strip searching only female ar-restees, or knew that his deputies were doing so indiscriminately and did nothing to stop them, a discriminatory purpose by Dillard cannot reasonably be inferred.