*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 14-CF-989

OLUSHOLA AKINMBONI, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-6044-13)

(Hon. Ronna L. Beck, Trial Judge)

(Argued September 16, 2015                    Decided November 19, 2015)

*Vincent A. Jankoski* for appellant.

*Seth M. Gilmore*, Assistant United States Attorney, with whom *Vincent H. Cohen, Jr.*, Acting United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *John P. Mannarino*, and *Lindsey Merikas*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN, BLACKBURNE-RIGSBY, and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*:  Appellant Olushola Akinmboni challenges his convictions for possession of a controlled substance (marijuana and benzylpiperazine or "BZP") and possession of drug paraphernalia.  Mr. Akinmboni

argues that the trial court erred by denying his motion to suppress evidence as obtained in violation of the Fourth Amendment.  We reverse.

**I.**

Viewed in the light most favorable to the trial court's suppression ruling, the evidence was as follows.  On April 11, 2013, Metropolitan Police Department Officers Zachary Blier and Herbert Nichols saw Mr. Akinmboni driving a car with a broken light.  The officers activated their emergency lights and siren to conduct a traffic stop.  As Mr. Akinmboni slowly pulled over, the officers saw him make several movements toward the center console and then back toward his lap.

After opening the door of the car Mr. Akinmboni had been driving, Officer Blier smelled burnt marijuana.  As Officer Blier began to remove Mr. Akinmboni from the car, Mr. Akinmboni put something in his mouth and began to chew.  The officers were unable to retrieve the object, but they saw green leafy flakes inside Mr. Akinmboni's mouth.  Officer Blier searched the car, finding marijuana.  The officers then arrested Mr. Akinmboni.

The following day, Mr. Akinmboni was brought to a Superior Court cellblock. Deputy United States Marshal Timothy Writt, who was on duty at the cellblock, searched Mr. Akinmboni to make sure that he did not have weapons or contraband that could present a safety risk. While patting down Mr. Akinmboni's clothing, Deputy Writt felt a foreign object in Mr. Akinmboni's groin area. After taking Mr. Akinmboni to a single cell to ensure greater privacy, Deputy Writt removed the object, which was a bag of marijuana. Deputy Writt then decided to conduct a strip search for further contraband.

During the strip search, Deputy Writt directed Mr. Akinmboni to remove all of his clothing and to manually expose the area between his buttocks to permit visual inspection of his anal cavity. When Mr. Akinmboni complied, a portion of a plastic baggie came into view, protruding from his anus. At this point, Deputy Writt could not tell what the baggie contained.

Deputy Writt instructed Mr. Akinmboni to extract the baggie from his anus. Mr. Akinmboni complied but then attempted to flush the baggie down a nearby toilet. Officers recovered the baggie, which contained marijuana. Deputy Writt again instructed Mr. Akinmboni to manually expose the area around his anal cavity. When Mr. Akinmboni did so, a portion of another plastic baggie came into

view, and Deputy Writt directed Mr. Akinmboni to remove the baggie. Mr. Akinmboni obeyed, and the officers seized the second baggie, which contained pills of assorted colors. Mr. Akinmboni spread his buttocks several more times, revealing additional plastic baggies that he removed at Deputy Writt's direction. Ultimately, the search produced three additional baggies containing, respectively, a rocklike substance, a powdery substance, and rolling papers. Deputy Writt did not spread Mr. Akinmboni's buttocks or himself remove any of the items from Mr. Akinmboni's anal cavity. Before ordering Mr. Akinmboni to extract the items, Deputy Writt did not seek the assistance of trained medical personnel or contact the U.S. Attorney's Office about the advisability of obtaining a warrant. Deputy Writt testified that, under the circumstances, a U.S. Marshals Service Policy Directive did not require either step.

Defense counsel argued that all of the contraband recovered from Mr. Akinmboni's anal cavity during the cellblock search should be suppressed under the Fourth Amendment because a warrant was required and because a doctor should have been involved. The trial court denied the motion to suppress, concluding that the Fourth Amendment did not require a warrant or the involvement of medical personnel. After a jury trial, Mr. Akinmboni was convicted of possessing marijuana, BZP, and drug paraphernalia.

**II.**

In reviewing a ruling on a motion to suppress, we must view the facts and all reasonable inferences therefrom in favor of sustaining the trial court's ruling. *Peay v. United States*, 597 A.2d 1318, 1320 (D.C. 1991) (en banc). We review de novo the trial court's legal conclusions, including the determination that a search or seizure was conducted in a reasonable manner. *Womack v. United States*, 673 A.2d 603, 607 (D.C. 1996); *United States v. Guzman-Padilla*, 573 F.3d 865, 886 (9th Cir. 2009).

On appeal, the United States does not dispute that Deputy Writt's directive to Mr. Akinmboni to remove the items from his anal cavity constituted a Fourth Amendment search and seizure. The parties do dispute a number of other issues, however, including whether Deputy Writt was required to obtain a warrant and whether the intrusion in this case could properly be viewed for Fourth Amendment purposes as a search incident to arrest or as falling within the plain-view doctrine. We need not address those issues and express no view with respect to them. Rather, we conclude that the United States failed to carry its burden of establishing that it was reasonable under the Fourth Amendment to conduct such a search and seizure without the involvement of medical personnel.

**A.**

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. The requirement of reasonableness is the "ultimate touchstone of the Fourth Amendment." *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (internal quotation marks omitted). In the absence of an applicable exception, warrantless searches or seizures are unreasonable. *Illinois v. McArthur*, 531 U.S. 326, 330-31 (2001); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

If a search or seizure is conducted without a warrant, the government bears "the burden . . . [of] show[ing] that the search or seizure was reasonable." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995); *see also, e.g.*, *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971) (government bears burden of showing exception to warrant requirement); *Gilliam v. United States*, 46 A.3d 360, 365 (D.C. 2012) (absent warrant, government bears burden of establishing probable cause); *United States v. Jones*, 374 F. Supp. 2d 143, 147 (D.D.C. 2005) (government bears burden of justifying warrantless searches and seizures). The government may discharge this burden in part by showing that the search or

seizure falls within an exception to the warrant requirement. *McArthur*, 531 U.S. at 330-31. Even where such an exception applies, however, "a search is not beyond Fourth Amendment scrutiny; for it must be reasonable in its scope and manner of execution." *Maryland v. King*, 133 S. Ct. 1958, 1970 (2013). When a defendant challenges the reasonableness of a warrantless search or seizure, the "government bears the burden of showing that the measures employed [] were justified." *United States v. Mangum*, 321 U.S. App. D.C. 348, 353, 100 F.3d 164, 169 (1996).

Determining whether a search or seizure was reasonable in manner requires a balancing of the needs of the government against the invasiveness of the intrusion and its impact on the suspect. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). In assessing reasonableness, courts "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.*; *see also, e.g.*, *Washington v. United States*, 594 A.2d 1050, 1052 (D.C. 1991). Where a search or seizure involves the removal of items from sensitive body cavities, including anal or vaginal cavities, the reasonableness of the methods used may depend upon "a variety of factors including hygiene, medical training, emotional and physical trauma, and the

availability of alternative methods for conducting the search." *United States v. Fowlkes*, No. 11-50273, 2015 WL 5667555, at *5 (9th Cir. Sept. 28, 2015).

**B.**

The Ninth Circuit's recent decision in *Fowlkes* illustrates the risks posed when untrained individuals extract unknown contraband from sensitive body cavities. In *Fowlkes*, officers conducting a jail intake search believed that an arrestee had secreted contraband in his anal cavity. 2015 WL 5667555 at *1. Although the arrestee initially resisted, the officers forced him to bend forward and expose the area between his buttocks, revealing part of a plastic bag protruding from his anus. *Id.* at *2. Acting in the absence of medical personnel and without any advance knowledge of the plastic bag's contents or size, one of the officers removed the bag. *Id.* Although the officer testified that he was able to retrieve the bag without himself touching or penetrating the arrestee's anal cavity, the "removal itself was a difficult, abrasive procedure." *Id.* As things turned out, the object inside the bag was about the size of a golf ball. *Id.* Once removed, the bag was covered in blood. *Id.*

Relying heavily on the medical risks posed, the Ninth Circuit held that the officer's conduct was constitutionally unreasonable. *Fowlkes*, 2015 WL 5667555, at \*3-10. The court pointed out that there was "no evidence that any of the officers had medical or any other relevant training on how to safely remove suspicious objects from an arrestee's rectum or how to evaluate whether such removal could cause serious physical harm or death." *Id.* at \*6; *see also id.* (citing *United States v. Cameron*, 538 F.2d 254, 258 (9th Cir. 1976) (Kennedy, J.) ("[T]he person accused of concealing contraband within his body is faced with the real prospect that the most intimate portions of his anatomy will be invaded and that he will suffer resulting pain or even physical harm.")). Moreover, the court explained:

> [T]he [] officers did not take adequate steps to minimize [the arrestee's] physical trauma. They did not, for example, use lubrication or ensure that the removal was conducted under sanitary conditions; they did not seek the guidance or assistance of medical personnel; and they did not assure themselves that removing the object from [the arrestee's] rectum was safe—indeed they did not know the size, shape, or substance of the object.

*Id.* at \*6.

The circumstances in *Fowlkes* were significantly more aggravated than those in the present case. But *Fowlkes* is not the only case to highlight the risks posed

when untrained individuals conduct searches or seizures involving the removal of contraband from sensitive body cavities. *See, e.g.*, *State v. Barnes*, 159 P.3d 589, 591 (Ariz. Ct. App. 2007) (officer's removal of items from suspect's anal cavity risked potential trauma and pain); *United States ex rel. Guy v. McCauley*, 385 F. Supp. 193, 198-99 (E.D. Wis. 1974) (removal of object from pregnant arrestee's vagina unconstitutional because, among other things, removal was conducted by individuals without medical training and outside medical environment); *cf. Schmerber v. California*, 384 U.S. 757, 771-72 (1966) (observing that searches "involving use of [even rudimentary] medical technique[s]," if administered by police and in absence of medical personnel, "might [] invite an unjustified element of personal risk of infection and pain").

In the present case, the United States introduced no evidence directly addressing Mr. Akinmboni's contention that the intrusion in this case was unreasonable because of the absence of medical personnel. In this court, the United States contends for several reasons that the intrusion in this case was nevertheless reasonable. We conclude otherwise.

First, the United States argues that Deputy Writt left removal of the contraband to Mr. Akinmboni, who did not voice any complaint before complying.

The United States does not dispute, however, that a reasonable person in Mr. Akinmboni's position would have understood himself to have been required to comply with Deputy Writt's directive. We therefore attribute little significance to the absence of a complaint. Having Mr. Akinmboni remove the items may have reduced some of the risks that would have been posed if Deputy Writt had removed the items, because Mr. Akinmboni presumably knew the nature of the objects inside his anal cavity. Nevertheless, Mr. Akinmboni may well have lacked other information necessary to accurately assess the medical risks associated with removing the items in the absence of medical personnel. We therefore are not persuaded that Mr. Akinmboni's compliance suffices to support a conclusion that the intrusion in this case was reasonable despite the absence of medical personnel.

Second, the United States argues that, before he ordered Mr. Akinmboni to remove the first baggie, Deputy Writt could see that the baggie contained a leafy material. Thus, the United States argues, Deputy Writt had sufficient information about the nature of the objects in Mr. Akinmboni's anal cavity to justify proceeding without medical personnel. Deputy Writt's testimony, however, appears to indicate that he was not able to perceive anything about the contents of the first baggie until after Mr. Akinmboni removed the baggie. Moreover, even if Deputy Writt had been able to see a leafy substance at the outset, the first baggie

and the other baggies still could have contained other items of varying size and texture, making removal potentially quite dangerous. *See Fowlkes*, 2015 WL 5667555, at *7 n.5 ("[K]nowing that an object is contraband is not the same as knowing the object can be safely removed. The officers' lack of information about the object-its precise size, shape, and texture; whether the surrounding plastic was abraded; whether the inside of [the arrestee's] rectal cavity was injured; and whether the substance inside could potentially poison him-highlights the heightened 'personal risk' inherent in the physical search.").

Third, the United States points out the absence of evidence that Mr. Akinmboni actually experienced any discomfort or injury in removing the items. As the Fourth Circuit observed in a similar situation, however, "[t]he fortuity that [the arrestee] was not injured in the course of this action does not substantiate its safety." *United States v. Edwards*, 666 F.3d 877, 885 (2011); *see also, e.g.*, *Barnes*, 159 P.3d at 591 ("Although nothing in the record suggests that [the arrestee] actually suffered any trauma or pain, we have little doubt that an officer's removal of items extending into [the arrestee's] 'innards' generally poses such potential risks, the relevant consideration here.") (emphasis omitted).

Fourth, the United States notes that Deputy Writt acted in accordance with official policy. We agree that compliance or non-compliance with an applicable policy can be potentially relevant to the constitutional reasonableness of a search or seizure. *See, e.g.*, *McCauley*, 385 F. Supp. at 199-200 (in finding that intrusive search was unreasonable, court notes absence of formal guidelines governing such searches). Nevertheless, the fact that a search was conducted in accordance with an applicable policy does not by itself establish that the search was reasonable. *See, e.g.*, *Way v. County of Ventura*, 445 F.3d 1157, 1160-62 (9th Cir. 2006) (invalidating strip-search policy on Fourth Amendment grounds). In the present case, the United States presented no information about the rationale or basis for the policy in question. Under the circumstances, we do not view as sufficient the mere fact that such a policy exists and was followed.

Fifth, the United States suggests that the intrusion in this case should be treated for Fourth Amendment purposes as the equivalent of a visual body-cavity inspection. For the reasons we have already explained, however, we conclude that compelling Mr. Akinmboni to remove the items at issue in this case was substantially more intrusive than a search that entailed only visual inspection.

Finally, the United States relies on several out-of-jurisdiction cases upholding searches and seizures involving the removal of objects partially protruding from anal or vaginal cavities. *See, e.g.*, *United States v. Himmelwright*, 551 F.2d 991, 993-96 (5th Cir. 1977) (reasonable for customs officers to request suspect to remove object partially protruding from suspect's vagina). These cases are not persuasive, however. In each of the cases, the defendant did not raise, and the court did not address, the question whether the searches and seizures were unreasonable under the Fourth Amendment because of the absence of medical personnel. In contrast, as we have already noted, the Ninth Circuit's recent decision in *Fowlkes* considered this issue at length, concluding that the removal of unknown contraband from a suspect's sensitive body cavity in the absence of medical personnel presents a real risk of injury. *Fowlkes*, 2015 WL 5667555, at *3-10.

To be clear, we are not holding that, no matter what the other circumstances, medical personnel must always be involved before the removal of contraband that is partially protruding from an arrestee's sensitive body cavity. For example, this case does not involve circumstances in which medical personnel were not readily available and immediate removal was essential to protect the physical safety of the arrestee or of others. We equally do not mean to imply that the presence of trained

medical personnel will always suffice to render such removals reasonable. We do hold, however, that the government bears the burden of establishing the reasonableness of such a removal and that, in the present case, the United States did not carry that burden.

## III.

For the foregoing reasons, we conclude that evidence of the items removed from Mr. Akinmboni's anal cavity during the warrantless cellblock search and seizure was obtained in violation of the requirements of the Fourth Amendment. The evidence was therefore inadmissible as evidence of Mr. Akinmboni's guilt. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). The United States has not contended that admission of the evidence at issue was harmless. We therefore reverse the judgment and remand for further proceedings.

*So ordered.*